FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

Southern Division

2016 MAY 27 P 3: 14

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | * | CLERK'S OFFICE |
| **OPPORTUNITY COMMISSION,** | * | AT GREENBELT |
| | | BY_____DEPUTY |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Case No.: GJH-15-2342** |
| | * | |
| **DIMENSIONS HEALTHCARE SYSTEM,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff, the U.S. Equal Employment Opportunity Commission (the "EEOC" or

"Commission"), initiated this action on August 10, 2015, alleging that Defendant, Dimensions

Healthcare System ("Dimensions Healthcare"), unlawfully discriminated against one of its

former employees on the basis of sex. *See* ECF No. 1. The EEOC has filed two motions that are

presently pending before the Court: (1) a Motion for Partial Summary Judgment on the issue of

pre-suit conciliation, ECF No. 9, and (2) a Motion to Strike portions of Dimensions Healthcare's

response in opposition to the EEOC's Summary Judgment Motion, ECF No. 11. No hearing is

necessary to resolve these Motions. *See* Local Rule 105.6 (D. Md.). For the reasons that follow,

the EEOC's Motions are granted. [1]

---

[1] Dimensions Healthcare has also filed a Motion to Strike a letter filed by the EEOC in which the EEOC called the Court's attention to recently-decided cases and which, in essence, supplemented the EEOC's briefing on its Motions. *See* ECF Nos. 17 & 18. The EEOC has not responded to this Motion and the time to do so has expired. The Court will therefore grant Dimensions Healthcare's Motion and notes that the Court has disregarded any argument presented by the EEOC in its letter. *Cf. Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294–95 (D.C. Cir. 2004) (finding no error where district court granted motion to dismiss because plaintiffs' failure to respond to motion within prescribed time renders motion conceded).

## I.    BACKGROUND

Although the pending Motions do not ask the Court to rule upon the merits of this case, it

is useful to begin with a review of the relevant factual background that led to this action.

According to the Complaint, Cassandra Crawford, the complainant, had been employed by

Dimensions Healthcare as of May 2007. ECF No. 1 at ¶ 7. In April 2012, Crawford was

promoted to a "Team Lead" position, in which she oversaw and managed several team members

and performed various human resources tasks, including interviewing, monitoring time issues,

executing performance reviews, and disciplining subordinates. *Id.* at ¶ 8.

Crawford took maternity leave between January and April of 2014. *Id.* at ¶ 9. On or

around October 14, 2014, Crawford learned that Dimensions Healthcare had selected Terraze

Jones, who is characterized in the Complaint as a "less experienced male," for a promotion to the

manager position in the Patient Financial Services Department. *Id.* at ¶ 10. Previously, Jones had

been Crawford's subordinate and had been disciplined by her and others. *Id.* at ¶ 11. Crawford

complained to her supervisor upon learning of Jones's promotion but was told that the decision

was final. *Id.* at ¶ 13. Crawford later met with Judy Selvage, Dimensions Healthcare's Associate

Vice President and Director of the Patient Financial Services Department, to discuss Jones's

promotion. *Id.* at ¶ 14. Selvage explained that, although Crawford was considered for the

position, Jones was selected instead because Crawford had been "on maternity leave for a

while." *Id.* at ¶ 15. Shortly thereafter, Crawford resigned and filed a charge of discrimination

with the EEOC. *Id.* at ¶¶ 6, 16; *see also* ECF No. 9-3.

On May 11, 2015, the EEOC issued its written determination finding that there was

reasonable cause to believe that Dimensions Healthcare discriminated against Crawford on the

basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq. See* ECF No. 9-4. In that notice, the EEOC informed Dimensions Healthcare that, upon such

a finding, the EEOC "attempts to eliminate the alleged unlawful practices by informal methods

of conciliation." *Id.* at 3.[2] The notice further stated:

> [T]he Commission now invites the parties to join with it in reaching a just
> resolution of this matter. In this regard, conciliation of this matter has now begun.
> Please be advised that upon receipt of this finding, any reasonable offer to resolve
> this matter will be considered. . . . A [C]ommission representative will prepare
> and monitor an actual dollar amount to include accruing wage losses and
> attendant benefits, with interest to date, any appropriate front pay; and, if
> appropriate, attorney fees and costs which have accrued to date. . . .
>
> If [Dimensions Healthcare] declines to discuss settlement or when, for any other
> reason, a settlement acceptable to the [EEOC] office director is not obtained, the
> director will inform [Dimensions Healthcare] of the court enforcement
> alternatives available to the Commission.

*Id.*

According to the EEOC, the EEOC and Dimensions Healthcare "engaged in

communications" between May 11, 2015 and July 7, 2015 in an effort to "provide [Dimensions

Healthcare] the opportunity to remedy the discrimination practices described" in the EEOC's

determination notice, and that such communications included "sending [Dimensions Healthcare]

a conciliation proposal." ECF No. 9-2 at ¶ 6. Subsequent to these "communications," the EEOC

issued a notice to Dimensions Healthcare on July 7, 2015, indicating that "efforts to conciliate

this charge have been unsuccessful" and that "further conciliation efforts would be futile or non-

productive." ECF No. 9-5.

The EEOC then filed the instant lawsuit on August 10, 2015. ECF No. 1. On October 9,

2015, Dimensions Healthcare filed an Answer to the Complaint, in which it raised multiple

affirmative defenses, including that the EEOC's claims are "barred to the extent it failed to

properly conciliate Crawford's charge of discrimination." ECF No. 4 at 4. Dimensions

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated
by that system.

Healthcare then filed an Amended Answer on October 16, 2015, withdrawing its defense of failure-to-conciliate. *See* ECF No. 7.[3]

While discovery was ongoing, the EEOC filed the instant Partial Motion for Summary Judgment indicating that Dimensions Healthcare has refused to stipulate that the EEOC has fulfilled all conditions precedent to the filing of this lawsuit. *See* ECF No. 9-1 at 3. Dimensions Healthcare argues, however, that there remains a genuine dispute of material fact as to whether the EEOC failed to properly negotiate prior to initiating this action. *See* ECF No. 10. The specifics of Dimensions Healthcare's arguments regarding the conciliation process are the subject of the EEOC's Motion to Strike. *See* ECF No. 11.

## II.    STANDARD OF REVIEW

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

---

[3] It is somewhat perplexing that Dimensions Healthcare continues to press an affirmative defense of failure-to-conciliate after amending its Answer to remove that defense. *See* ECF No. 7; *see also Suntrust Mortgage, Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243, 252 (4th Cir. 2013) ("[I]t is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case . . . ."). Nevertheless, because the EEOC does not argue that the defense was waived, the Court will consider the merits of the EEOC's Motion.

in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).
Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence
but simply to decide if there is a genuine issue for trial. *Id.* at 249.

## III.    DISCUSSION

"Title VII of the Civil Rights Act of 1964 sets out a detailed, multi-step procedure
through which the Commission enforces the statute's prohibition on employment
discrimination." *Mach Mining, LLC v. E.E.O.C.*, --- U.S. ---, 135 S. Ct. 1645, 1649 (2015)
(citation omitted). Importantly, before the EEOC may file suit alleging unlawful discrimination
on the part of an employer, Title VII requires that the EEOC "endeavor to eliminate any such
alleged unlawful employment practice by informal methods of conference, conciliation, and
persuasion." 42 U.S.C. § 2000e-5(b). In this way, Title VII makes clear that the "'preferred
means' for achieving" an end to employment discrimination is "through '[c]ooperation and
voluntary compliance.'" *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228, 102 S. Ct. 3057 (1982)
(quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011 (1974)).

The United States Supreme Court recently examined the conciliation provision of Title
VII in *Mach Mining* to determine whether and to what extent a court can review the EEOC's
efforts to determine whether the conciliation requirement has been satisfied. The Court
concluded that, although the EEOC's duty to conciliate is subject to judicial review, the review is
exceptionally narrow. *See Mach Mining*, 135 S. Ct. at 1653–56. Specifically, when a defendant
raises a defense of failure-to-conciliate, a court's review is limited to the following issues: (1)
whether the EEOC "inform[ed] the employer about the specific allegation," and (2) whether the
EEOC "tr[ied] to engage the employer in some form of discussion (whether written or oral), so

5

as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* at

1655–56.

With respect to the first issue, in order to satisfy its duty to conciliate, the EEOC must

provide the employer with notice that "properly describes both what the employer has done and

which employees (or what class of employees) have suffered as a result." *Id.* at 1656. To satisfy

the second part of the test, however, the Court explained:

> [T]he EEOC need only "endeavor" to conciliate a claim, without having to devote
> a set amount of time or resources to that project. § 2000e-5(b). Further, the
> attempt need not involve any specific steps or measures; rather, the Commission
> may use in each case whatever "informal" means of "conference, conciliation,
> and persuasion" it deems appropriate. *Ibid.* And the EEOC alone decides whether
> in the end to make an agreement or resort to litigation: The Commission may sue
> whenever "unable to secure" terms "acceptable *to the Commission*." § 2000e-
> 5(f)(1) (emphasis added). . . . Congress left to the EEOC such strategic decisions
> as whether to make a bare-minimum offer, to lay all its cards on the table, or to
> respond to each of an employer's counter-offers, however far afield. So too
> Congress granted the EEOC discretion over the pace and duration of conciliation
> efforts, the plasticity or firmness of its negotiating positions, and the content of its
> demands for relief.

*Id.* at 1654.

In reaching this conclusion, the Court rejected the argument that a reviewing court must

inquire into whether the EEOC made a "good faith" effort at conciliation. *See id.* In that case, the

defendant, Mach Mining, sought to impose certain obligations on the EEOC as part of the

conciliation process, specifically, that the EEOC would be required in every case to "let the

employer know the minimum . . . it would take to resolve the claim—that is, the smallest

remedial award the EEOC would accept"; to "lay out the factual and legal basis for all its

positions, including the calculations underlying any monetary request"; and to "refrain from

making take-it-or-leave-it offers . . . ." *Id.* (internal quotation marks and citations omitted).

According to Mach Mining, "the EEOC has to go back and forth with the employer, considering

and addressing its various counter-offers and giving it sufficient time at each turn to review and

6

respond." *Id.* (internal quotation marks and citation omitted). The Court concluded that this "proposed code of conduct conflicts with the latitude Title VII gives the Commission to pursue voluntary compliance with the law's commands" because "[e]very aspect of Title VII's conciliation provision smacks of flexibility." *Id.* If a court were to assess the EEOC's conciliation choices as Mach Mining suggested, it would "not . . . [be] enforc[ing] the law Congress wrote, but . . . impos[ing] extra procedural requirements. Such judicial review extends too far." *Id.* at 1654–55.

Thus, for the EEOC to prove that it satisfied the necessary conciliation prerequisite, "[a] sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice . . . ."[4] *Id.* at 1656. Then, "[i]f . . . the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute." *Id.* at 1656.

This "relatively barebones" review is all that a court is permitted to inquire into when considering a failure-to-conciliate defense. *See id.* "Judicial review of those [two] requirements (*and nothing else*) ensures that the Commission complies with the statute." *Id.* (emphasis added). Such narrow review is necessary in order to preserve confidentiality in the conciliation process. Indeed, "[b]ecause confidentiality promotes candor in discussions and thereby enhances the prospects for agreement" without resorting to litigation in court, *id.* at 1655, Title VII requires that any discussions that are part of the informal conciliation process remain confidential, *see* § 2000e-5(b) ("Nothing said or done during and as a part of such informal endeavors may be made

---

[4] However, merely submitting as evidence the "bookend" letters in which the EEOC first notifies the employer that it has found reasonable cause to believe that the law was violated and later that conciliation efforts have failed is insufficient for the EEOC to carry its burden. *Id.* at 1653.

7

public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned."). Thus, in *Mach Mining*, the Supreme Court concluded that the district court in that case erred by not striking from the record descriptions of the conciliation process, which Mach Mining submitted as purported proof that the EEOC failed to make a "sincere and reasonable effort to negotiate." 135 S. Ct. at 1655 (citation omitted). In failing to strike this information from the record, "[t]he court . . . failed to give effect to [Title VII's] non-disclosure provision. And in so doing, the court undermined the conciliation process itself . . . ." *Id.* Confidentiality in the conciliation process is necessary because "[t]he maximum results from the voluntary approach will be achieved if the parties know that statements they make cannot come back to haunt them in litigation. And conversely, the minimum results will be achieved if a party can hope to use accounts of those discussions to derail or delay a meritorious claim." *Id.* (internal quotation marks and citations omitted).

Here, in support of its Motion for Partial Summary Judgment, the EEOC submitted the declaration of Rosemarie Rhodes, the Director of the Baltimore Field Office of the EEOC. ECF No. 9-2. Rhodes indicated that, after the EEOC determined that there was reasonable cause to believe that Dimensions Healthcare failed to promote Crawford because of her sex, on May 11, 2015, it sent a letter to Dimensions Healthcare indicating as much and inviting it to informally resolve the claim. *Id.* at ¶ 5. Then, between May 11, 2015 and July 7, 2015, the EEOC "engaged in communications with [Dimensions Healthcare] to provide [Dimensions Healthcare] with the opportunity to remedy the discriminatory practices described in the [l]etter . . . , including sending Defendant a conciliation proposal." *Id.* at ¶ 6. Nevertheless, on July 7, 2015, Rhodes determined that "further efforts in conciliation would not result in the Commission being able to secure . . . a conciliation agreement acceptable to the Commission" and, accordingly, the EEOC

issued notice to Dimensions Healthcare that conciliation efforts had been unsuccessful and that further efforts would be unproductive. *Id.* at ¶ 7.

This evidence is sufficient for the EEOC to satisfy its burden to establish that it "endeavor[ed] to eliminate [the] alleged unlawful employment practice by informal methods" prior to filing suit. *See* § 2000e-5(b). The May 11, 2015 letter "inform[ed] [Dimensions Healthcare] about the specific allegation," and Rhodes' declaration establishes that the EEOC "tr[ied] to engage the employer in some form of discussion" prior to filing suit. *See Mach Mining*, 135 S. Ct. at 1655–56.

In opposition to the EEOC's Motion, Dimensions Healthcare in essence argues that the EEOC did not try in earnest to reach a resolution prior to litigating this case. *See* ECF No. 10 at 4. To support its argument, Dimensions Healthcare submitted the affidavit of its counsel, Kraig B. Long, who provided certain details as to content of the conciliation process. Those details, however, are not only irrelevant to the scope of this Court's review under *Mach Mining*, but also violate the confidentiality provision of Title VII. *See* § 2000e-5(b) ("*Nothing said or done* during and as a part of such informal endeavors may be made public . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned." (emphasis added)). Accordingly, the Court will grant the EEOC's Motion to Strike those portions of Dimensions Healthcare's briefing and Long's affidavit which reveal some of what was "said or done" during the conciliation process.[5] *See E.E.O.C. v. Amsted Rail Co.*, No. 14-CV-1292-JPG-SCW, 2016 WL 233396, at \*5 (S.D. Ill. Jan. 20, 2016) (granting EEOC's motion to strike employer's arguments regarding conciliation efforts and rejecting "as a distinction without a

---

[5] A motion to strike matter other than pleadings is ordinarily not permitted under Federal Rule of Civil Procedure 12(f), insofar as that rule refers only to striking "pleadings." *See Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013), *aff'd*, 615 F. App'x 119 (4th Cir. 2015). Nevertheless, "[t]he Court does have inherent authority to strike other documents." *Id.* Although "'inherent powers must be exercised with restraint and discretion,'" *id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123 (1991)), exercise of that power is proper here because Title VII prohibits the disclosure of the matters to be struck.

difference" employer's argument that "it ha[d] not revealed the substantive details of the communications but ha[d] only described the relative efforts to conciliate").

Moreover, to the extent Dimensions Healthcare requests that this Court pry into whether the EEOC negotiated in good faith, any such argument was explicitly foreclosed by *Mach Mining*, as multiple courts have recognized since the Supreme Court issued that decision.[6] *See, e.g.*, *Ariz. ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1199 (9th Cir. 2016) (noting that that *Mach Mining* rejected notion that EEOC had an obligation to negotiated in good faith); *E.E.O.C. v. Blinded Veterans Ass'n*, 128 F. Supp. 3d 33, 44 (D.D.C. 2015) ("[The employer's] invitation for the Court to place itself in the shoes of the negotiating parties, to assess how particular proposals should have been understood, . . . and to evaluate whether the EEOC ended the conciliation process [too] abruptly vastly exceeds the type of review contemplated by *Mach Mining*."); *R.I. Comm'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 121 n.15 (D.R.I. 2015) (internal quotation marks and citation omitted) ("[I]t is crystal clear that the kind and extent of [conciliation] discussions are solely within the discretion of the agency, not subject to judicial scrutiny."); *E.E.O.C. v. Lawler Foods, Inc.*, No. 4:14-CV-03588, 2015 WL 8457816, at *3 n.1 (S.D. Tex. Dec. 4, 2015) ("*Mach Mining* simply leaves no room for judicial review of the reasonableness and flexibility of the EEOC's conciliatory communications."). Thus, the EEOC's Motion for Partial Summary Judgment must be granted.

---

[6] The Court is not persuaded by Dimensions Healthcare's reliance on *E.E.O.C. v. OhioHealth Corp.*, 115 F. Supp. 3d 895 (S.D. Ohio 2015), in which the court concluded that it was error for the EEOC to not provide the calculations by which it reached its damage demand and to present a take-it-or-leave-it settlement proposition. *See id.* at 898–99. The *OhioHealth* court found that, in these ways, the EEOC failed to negotiate in good faith. *See id.* at 896. This level of review far exceeds that which is contemplated by *Mach Mining*. Indeed, in *Mach Mining*, the Supreme Court explicitly rejected imposing a good faith negotiation requirement on the EEOC, as well as the notion that the EEOC was required to provide calculations underlying any monetary request. *Mach Mining*, 135 S. Ct. at 1654. Rather, the Supreme Court explained that the EEOC has complete control over "such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield." *Id.*

## IV.   CONCLUSION

For the foregoing reasons, the EEOC's Motions, ECF Nos. 9 & 11, are **GRANTED**.

Additionally, Dimensions Healthcare's Motion to Strike, ECF No. 18, is **GRANTED**. A separate

Order follows.


Dated: May 27 , 2016


GEORGE J. HAZEL
United States District Judge

11