IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 15-2342 |
| | * | |
| DIMENSIONS HEALTHCARE SYSTEM, | * | |
| Defendant. | * | |

******

## MEMORANDUM OPINION

Pending in this employment discrimination case is Defendant's motion for summary judgment (ECF No. 29). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendant's motion is DENIED.

## I.    BACKGROUND[1]

Dimensions Healthcare System ("DHS") is an integrated, not-for-profit healthcare system serving residents of Prince George's County, Maryland and the surrounding area. In May 2007, Ms. Cassandra Crawford ("Crawford") joined DHS as an appeals coordinator in the company's Patient Financial Services ("PFS") Department. ECF No. 30-1. In 2012, Ms. Judith Selvage ("Selvage") and the rest of the management team approached Crawford to see if she would be interested in a promotion to team leader. ECF No. 30-5 at 4–6. Selvage served as the assistant vice president of the PFS Department at the time. The management team hierarchy in the PFS

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to the Plaintiff, the nonmoving party.

Department consists of lower-level insurance team specialists who report to team leaders, who in turn report to managers. ECF No. 29-10.

DHS's written hiring policy requires an employee to apply for vacant positions on the company's intranet website before DHS will consider the candidate. ECF No. 29-20. However, in practice DHS had offered promotions to current employees, including Crawford, and thereafter encouraged the employee to submit a formal application to finalize the promotion. ECF 30-3 at 15, 30-5 at 20. Crawford had already accepted the promotion to team leader prior to submitting a formal application and only after management approached her about taking the position. ECF No. 30-4; ECF No. 29-6 at 8–9. She held this position until her resignation in 2014. From January 2014 to April 2014, Crawford took an approved maternity leave. ECF No. 30-3 at 77–78.

On October 1, 2014, DHS posted two management position vacancies on the company's intranet website.[2] ECF No. 29-1 at 12. The first, a PFS manager position, was responsible for handling accounts receivable in the billing department. The other, a DHA manager, was a new position involving oversight of DHA's professional billing.

Terreze Jones ("Jones") was hired in 2013 as an insurance team specialist in the PFS department. ECF No. 29-18. In the fall of 2014, PFS Manager Christine Lewis ("Lewis") and Selvage approached Jones and told him that they were considering him for a promotion to team leader. ECF No. 29-1 at 13; ECF No. 29-7 at 10. They also told him that he would have to apply to the position online. But when Jones submitted his application, he discovered that no open team leader position existed. Instead, he noticed DHS's two manager vacancies—the PFS

_____

[2] DHS alleges that both positions were posted on October 1, 2014. The EEOC presents evidence that while the PFS Manager position was available on October 1st, the DHA Manager position was not posted until October 20th. ECF No. 30 at 24 n.9.

manager position and the DHS manager position. Both positions were one level higher on the

corporate ladder than the position Crawford held at the time, and two levels higher than Jones's

position as an insurance team specialist. ECF No. 30 at 8.

While the exact timeline remains unclear, Jones applied to the PFS Manager position

sometime in October or early November 2015. *Compare* ECF No. 29-21 (indicating that Jones

applied for the PFS manager position on October 6, 2014), *with* ECF No. 30-40 (indicating that

Jones applied for the PFS manager position on November 3, 2014). Around that time, Selvage

interviewed Jones for the PFS manager position. During the interview, Selvage told Jones that he

was qualified for both manager positions and arranged for Jones to meet with the DHA Practice

Manager, Donna Wallington. On November 3, 2014, after Jones met with Wallington, Jones

filed a formal application through DHA's intranet for the DHA manager position. ECF Nos. 29-

21 & 29-22. Jones was informally offered both manager positions shortly after speaking with

Wallington. ECF No. 30-13 at 16–18.

According to Crawford, she first learned of the vacant PFS manager position on October

14, 2014 when Avril Musa, Jones's supervisor, told Crawford that DHS had selected Jones to fill

the PFS manager position. ECF No. 30 at 8. Crawford was distraught because she believed DHS

had passed over her for a less qualified candidate. *Id.* That same day, Crawford raised the issue

with her direct supervisor, PFS Manager Christine Lewis. ECF No. 30-7 at 47. Lewis recognized

that Crawford was upset and instructed her to take the rest of the week off. Crawford obliged.

ECF No. 30-7 at 56.

When Crawford returned to work on Monday, October 20, 2014, Selvage called

Crawford into a meeting to discuss Jones's promotion. ECF No. 30-5 at 31–32. During this

meeting, Crawford told Selvage that she believed she deserved the promotion to PFS manager

over Jones because she was then serving as a team leader, a stepping-stone position to a PFS manager. ECF No. 30-5 at 41–42. Crawford also asked Selvage why Jones was promoted to PFS manager position over her, to which Selvage responded that Jones had a "management background." ECF No. 30-3 at 69. Crawford challenged the veracity of Selvage's representation, noting that when Crawford interviewed Jones to be an insurance team specialist, it was clear that Jones did not have management experience. ECF No. 30-3 at 68–76. Selvage's replied, "Well, like I said, he has a management background. Plus, you were on maternity leave for a while." ECF No. 30 at 11; ECF No. 30-31; ECF No. 30-3 at 74.

After the meeting, Crawford discussed what Selvage said during the meeting with Lewis, and learned that Selvage had supposedly demoted other women who had been out on maternity leave. *See, e.g.*, ECF No. 30-32; ECF No. 30-23 at 5–7; ECF No. 30-23 at 15–16. These conversations with Selvage and Lewis prompted Crawford to resign. After Crawford tendered her resignation, Jones ultimately declined the PFS manager position and instead accepted the DHA manager position. ECF No. 30-13 at 16–18. The PFS manager position remains open to this day.

Crawford filed a complaint with the EEOC on November 18, 2014. ECF No. 9-3. On May 11, 2015, the EEOC issued to DHS a Determination finding reasonable cause to believe DHS discriminated against Crawford because she had availed herself of maternity leave. ECF No. 9-4. The EEOC filed its complaint in this Court on August 10, 2015 alleging that Defendant DHS unlawfully discriminated against Crawford on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. *See* ECF No. 1.

## II.     STANDARD OF REVIEW

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment is inappropriate if any material fact at issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the court must construe the facts presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III.     ANALYSIS

Title VII of the Civil Rights Act of 1964, § 703(a), 42 U.S.C. 2000e *et seq.*, prohibits various forms of employment discrimination on the basis of race, color, religion, sex, or national origin. The Pregnancy Discrimination Act ("PDA"), an amendment to Title VII of the Civil

Rights Act, states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). "A claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 297 (4th Cir. 1998) (internal quotation marks omitted) (quoting *Boyd v. Harding Academy*, 88 F.3d 410, 413 (6th Cir. 1996)). Plaintiff thus bears the burden of showing that she was a victim of intentional discrimination. *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Additionally, Plaintiff bears the burden of establishing that Defendants discriminated against her "because of her pregnancy." *See id.*; 42 U.S.C. §§ 2000e–2(a)(1) & (2).

A plaintiff may survive summary judgment by establishing her Title VII discrimination claim either through direct and indirect evidence of discriminatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The Fourth Circuit has also referred to these two "avenues of proof" as the "mixed-motive" framework and the "pretext" framework, respectively. *Diamond*, 416 F.3d at 318 n.4 ("In the event that a plaintiff has direct evidence of discrimination or simply prefers to proceed without the benefit of the burden-shifting framework, she is under no obligation to make out a prima facie case."). Under either avenue of proof, the focus is on whether a reasonable juror could conclude that illegal discrimination was a motivating factor in the employment decision. *Sawicki v. Morgan State Univ.*, No. CIV. WMN-03-1600, 2005 WL 5351448, at *6 (D. Md. Aug. 2, 2005) (4th Cir. 2006). This Court concludes that the EEOC has met its burden under either the mixed-motive or burden-shifting frameworks.

6

### A.     Direct Evidence

The EEOC first argues that direct evidence establishes DHS' refusal to promote Crawford because of her sex. Specifically, it alleges that Selvage made clear to Crawford that she was not selecting her for the promotion to PFS manager because Crawford had been on maternity leave. Under the direct method of proof, "[t]o avoid summary judgment, the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (second alteration in original) (citation and internal quotation marks omitted).

In *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006), the Fourth Circuit explained that "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision" will satisfy plaintiff's burden at the summary judgment stage. Additionally, a statement that reflects a discriminatory attitude must have a nexus with the adverse employment action. *Id.* When determining whether such a nexus exists, courts have considered the context of the statement, its temporal proximity to the adverse employment action, and the status of the person making the statement. *See U.S. E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F. Supp. 2d 897, 907 (D. Md. 2011); *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 649 (4th Cir. 2007).

Here, Selvage met with Crawford to discuss why Jones was awarded the PFS manager position over Crawford. ECF No. 30-3 at 68; ECF No. 30-5 at 31–32. During this meeting, Crawford asked Selvage for an explanation. In direct response, Crawford attests that Selvage said, "well, like I said, he has a management background. Plus you were on maternity leave for a

while." ECF No. 30-3 at 74. Selvage, as the associate vice president of the PFS Department, was the ultimate decision-maker responsible for selecting a candidate to fill the PFS manager position. *See U.S. E.E.O.C.*, 815 F. Supp. 2d at 907 ("[T]o satisfy the nexus requirement in a direct evidence case, the person making the statement must hold the status of 'decisionmaker' within the defendant employer's organization."). What is more, Selvage's explanation for Crawford not receiving the promotion came on the heels of Selvage's decision, in close temporal proximity. Thus, a reasonable jury could conclude that Selvage's conversation with Crawford constitutes direct evidence of discrimination.

That Selvage denies making this statement, *see* ECF No. 30-5 at 42, does not defeat summary judgment. Rather, it highlights that they jury must determine who is telling the truth. Where the determination is "a quintessential question of fact," it "must be left to the trier of fact." *Etefia v. E. Baltimore Cmty. Corp.*, 2 F. Supp. 2d 751, 763 (D. Md. 1998). It will therefore be left to the jury to decide whether DHS harbored a "discriminatory attitude" that directly affected her decision to promote Jones over Crawford. *See Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 234 (4th Cir. 2007) (finding that a sufficient nexus existed where the plaintiff's supervisor stated that "he need[ed] younger, more aggressive Managers" in response to the plaintiff's inquiry as to the reason for his termination).

DHS counters that the EEOC failed to meet its burden because Selvage's statement was a single, isolated comment which should be accorded little weight. ECF No. 29-1 at 23–27. When considered in the context of Crawford's superior experience and qualifications relative to Jones, see *infra* at 15, the statement hardly seems isolated but rather corroborative of discriminatory motive. What is more, DHS's position may well open the door for the EEOC to demonstrate that Selvage engaged in a pattern of discriminating against women who took maternity leave.

When Crawford shared with Lewis Selvage's comments, Lewis responded that "she's [Selvage] got a habit of that" and explained that Selvage had demoted other women who had been out on maternity leave. ECF No. 30-3 at 93. One such employee, Eckwa Waldron, was a team leader when she took maternity leave in 2007. While on leave, Selvage "called [Waldron's] mom and asked when [she] would be returning from the hospital back to work." ECF No. 30-32 at 4. Selvage demoted Waldron after she returned from maternity leave.

When Waldron confronted Selvage, Selvage told her that she was demoted because there were "no more team leader positions in the office." ECF No. 30-32 at 4. Yet Selvage at her deposition testified that she demoted Waldron because *Waldron* "did not meet the qualifications" for team leader despite having performed in that position for three years prior to becoming pregnant. ECF No. 30-5 at 44. Selvage also admits to waiting until Waldron returned from maternity leave to demote her because she didn't want to touch the pregnancy issue "with a ten-foot pole." *Id.* at 44–45. Accordingly, at the summary judgment stage, genuine issues of material fact exist as to whether Selvage's comment was as offhanded or isolated as DHS claims.

**B.      Burden-Shifting Framework**

Alternatively, the EEOC argues that it can establish liability through circumstantial evidence using the burden-shifting framework set forth in *McDonnell Douglas*. Under this framework, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. Then, the burden shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the reason offered by the employer is false. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case, the EEOC must marshal facts upon which a jury could conclude that, more likely than not, DHS's failure to promote her was motivated by sex discrimination. More specifically, the EEOC must produce sufficient evidence to show that: 1) Crawford is a member of a protected class; 2) DHS had an open position for which she applied or sought to apply; 3) Crawford was qualified for the position; and 4) Crawford was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996). Although, it is undisputed that Crawford is a member of a protected class, DHS argues that the EEOC's claim fails nonetheless because it cannot prove the remaining three elements of its prima facie case.

### i. Failure to Apply

DHS first argues that the EEOC's sex discrimination claim must fail because Crawford did not apply for either of the available manager positions as required by DHS policy. ECF No. 29-1 at 28. The EEOC responds that Crawford's failure to apply does not defeat summary judgment because Crawford had already been rejected for the position as a result of taking maternity leave. Applying for the position, therefore, would have been futile. ECF No. 30 at 19. The Court agrees with the EEOC.

Normally, "[i]f an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). But even if a formal system exists, a plaintiff does not have to establish that she applied to an open position if doing so would have been a futile gesture. *See Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *Pinchback v. Armistead Homes Cor.*, 907 F.2d 1447, 1451 (4th Cir. 1990) (applying the futile gesture doctrine in a

housing discrimination case). To avail itself of this exception, the EEOC must prove that: (1) but for accurate knowledge of DHS's policy of discrimination, Crawford would have applied for the vacant position; and (2) if she had applied, DHS would have discriminatorily rejected her. *Brown*, 159 F.3d at 902; *Pinchback*, 907 F.2d at 1451.

Here, it is undisputed that DHS has a policy of formally posting vacancies on the company's intranet website. *See* ECF No. 29-20.[3] Although the parties debate when DHS posted the manager positions in question, the parties agree that by October 2014, the PFS manager position was posted; that Crawford had access to the job posting website; and that Crawford did not submit an application. But Crawford has also produced evidence that during her time as a team leader, she made clear that she was interested in becoming a manager, and believed that DHS was grooming her for a management position. ECF No. 30-3 at 62–63. Then, when Crawford met with Selvage to discuss the Manager position, Crawford was told she had effectively been rejected because she had taken maternity leave. *See* ECF No. 30-5 at 34, ECF No. 30-31. Crawford need not subject herself "to the humiliation of explicit and certain rejection" of formally applying after learning that she would not get the promotion in any event. *Brown*, 159 F.3d at 902–03 (citations and internal quotation marks omitted).

*ii. Qualifications*

DHS next argues that the EEOC cannot meet its burden under *McDonnell Douglas* because she was not qualified for the PFS manager position. ECF No. 29-1 at 32. This Court disagrees. DHS does not base its argument as to why Crawford was unfit for a promotion on any set promotional criteria, but instead offers Selvage's post-hoc amorphous justification that

---

[3] The Court notes that DHS's "policy" regarding the on-line application process was recently implemented and not necessarily followed. *See* ECF No. 30-3 at 14–15 (Crawford discussing how she was selected for the Team Lead position before formally applying). *See also* ECF 30-5 at 20 (testifying another employee had been promoted without applying).

"[Crawford] had a lot to learn" before she could be promoted to manager. ECF No. 30-5 at 29. *See also* ECF No. 29-4 at 9 (deposition of Christine Lewis) (stating that Crawford was qualified to be a manager "with training").

The EEOC counters that Crawford's direct supervisor, Christine Lewis, testified that Crawford deserved the promotion instead of Jones because Crawford "had been doing the work" necessary to transition into a managerial role. *See* ECF No. 30-7 at 42–43. Notably, Lewis also testified that Jones was not qualified for the position and communicated to this Selvage at the time Jones was extended the offer. *Id.* at 41–42. Lewis specifically noted that promoting Jones over Crawford was a "bad idea" and a "slap in the face" to Crawford given Crawford's previous experience as a team leader. *Id.*

This is not surprising given that Crawford met DHS's objective qualifications for the PFS manager position. While DHS does not have an identifiable set of promotional criteria, the PFS manager job description outlines the position's minimum requirements and the primary responsibilities. ECF No. 30-42.  Crawford was already performing many of these duties as team leader. *See* ECF No. 30 at 31-32; Crawford Tr., ECF No. 30-3; Team Leader Job Description, ECF No. 30-6; Lewis Tr., ECF No. 30-7, Crawford Performance Evaluations, ECF No. 30-18, -19, -20.  Thus, the EEOC has produced sufficient evidence for a reasonable jury to conclude that she was qualified for the job.

*iii. Not Selected Under Circumstances Giving Rise to an Inference of Discrimination*

Lastly, DHS argues that the EEOC cannot establish the fourth prong of its prima facie case—that Crawford was not selected for the promotion under circumstances giving rise to an inference of discrimination. With respect to the quantum of proof necessary to survive summary judgment, no hard and fast rules exist. Rather, a plaintiff need only present evidence that the

employer's actions were motivated by factors expressly forbidden by law. *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 866 (D. Md. 2000); *Alungbe v. Bd. of Trustees of Connecticut State Univ. (CSU) Sys.*, 283 F. Supp. 2d 674, 683 (D. Conn. 2003).

Here, a reasonable jury could conclude that Crawford did not get the promotion because of DHS's discriminatory animus towards her.  Crawford was qualified for a management position. She was being "groomed" for the position. As team leader, she was already performing many of the management functions. Yet she was not only passed over for the PFS position, she was told by the ultimate decision maker, Selvage, that taking maternity leave motivated Selvage's decision to promote Jones instead. *See* ECF No. 30 at 11; ECF No. 30-31 at 3. When considering the facts in the light most favorable to the EEOC, summary judgment must be denied.

*iv. Legitimate, Non-Discriminatory Reason for Failure to Promote*

DHS argues that even if the EEOC is able to satisfy its prima facie burden, summary judgment is still warranted because Jones was the most qualified applicant for the position. ECF No. 29-1 at 34; ECF No. 31 at 8. As DHS correctly states, "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 597 (D. Md. 2000), *aff'd*, 17 F. App'x 154 (4th Cir. 2001).

In support, DHS highlights Selvage's testimony that Jones was selected for the position based on his experience in the PFS Department and that she believed Crawford was not ready for a management position. ECF No. 29-3 at 11. At this stage, DHS need not persuade this Court that it was actually motivated by this reason. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 254 (1981). Rather, DHS need only produce sufficient admissible evidence to satisfy

its burden of production "so that the plaintiff will have a full and fair opportunity to demonstrate

pretext." *Id.* at 255. Put differently, it will be left to the jury to decide whether it believes DHS's

claimed reasons for selecting Jones over Crawford or whether such reasons function as a false

pretext for discriminating against Crawford in denying her the promotion.

*v. Pretext*

        At trial, Plaintiff bears the ultimate burden of persuasion "to demonstrate that the

proffered reason was not the true reason for the employment decision." *Id.*  Plaintiff may prove

the stated reason for failing to promote her was pretextual either "by showing that [s]he was

better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility

of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th

Cir. 2006) (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir.

2005)); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). The

Court must consider job qualifications based on the criteria that the employer has established for

the position in question. *See Anderson*, 406 F.3d at 269 (citing *Beall v. Abbott Labs.*, 130 F.3d

614, 620 (4th Cir. 1997)).

        Here, a reasonable jury could find that Crawford was more qualified than Jones sufficient

to undercut DHS' claimed reason for denying Crawford the promotion. *See Burdine*, 450 U.S. at

256 (1981). Although DHS focuses primarily on the candidates' relative managerial experience,

the PFS manager job description also lists relevant responsibilities to include "knowledge of the

major third party payers" in the area, familiarity with the company's accounting system, and

working knowledge of basic Microsoft programs. ECF No. 30-42.

Construing the facts in favor of the EEOC, a reasonable jury could determine that Crawford was the superior candidate. At the time of selection, Crawford had been working in the industry for twenty-three years, seven of which were spent at DHS. ECF No. 30-21. Jones, by contrast, had nine years of experience in the industry, two with DHS. ECF No. 30-22. Moreover, Crawford had routinely received solid and favorable performance evaluations where Jones had been disciplined for unexcused absences. *See, e.g.*, ECF No. 30-5 at 75; ECF No. 30-8 at 3–5 (discussing Jones's disciplinary issues). Crawford's performance evaluations highlight her proficiency in customer service, self-management, and adhering to the core values of the company. Indeed, Crawford's own direct supervisor with whom she had worked closely testified that Crawford was the superior candidate for the job.

DHS emphasizes that it believed Jones to be the more qualified candidate because Jones had managerial experience that Crawford lacked. ECF No. 31 at 10. DHS's evidence in this regard is suspect.  Jones' employment file contains three resumes, two of which do not reference any prior management experience. The first, appended to Jones's employment application submitted on February 8, 2013, describes his previous experience as a "Patient Care Coordinator" for a private physician's practice. ECF No. 30-39. The second is Jones's Internal Transfer Application for the open PFS manager position which is identical to that found in Jones's initial application. ECF No. 30-40.

On November 3, 2014, however, Jones also submits a resume to Selvage and Donna Wallington directly via email. ECF No. 30-41. This resume replaces the title "Patient Care Coordinator" with "Practice Administrator" and adds that he "[s]upervised staff members and daily operations of Pediatric practice created schedules, troubleshoot problems, provided training to new employees, assisted with payroll, and generated billing invoices." ECF No. 30-41 at 4.

The third resume was submitted only *after* Selvage told Crawford that she was promoting Jones because he had management experience, and now uses the term "management experience" to describe his prior position's duties. *Compare* ECF No. 30-39, -40, *with* ECF No. 30-41. Jones' only explanation for the difference is that he used "two different computers, I'm assuming" to edit and submit the resumes. ECF No 30-13 at 22. Jones direct supervisor, Avril Musa, and Lewis also testified that they were unaware that Jones had any management experience. ECF No. 30-8 at 7; ECF No. 30-7 at 35–37.

Further, both Jones' and Crawford's supervisors testified that Crawford was better suited for a manager position. *See, e.g.*, ECF No. 30-7 at 41. Not only did Jones have less experience than Crawford, Jones was also reprimanded for unexcused absences where Crawford enjoyed an unblemished record. *See, e.g.*, ECF No. 30-7 at 5–9 (discussing Crawford's superior performance). Thus, a reasonable factfinder could determine that at the time of Jones's promotion, Crawford was the more qualified candidate.

Jones, with relatively little management experience and disciplinary issues, also inexplicably leapfrogged over DHS' established promotional chain, further calling into question the reliability of DHS's claims. Selvage admits that an employee in the PFS department would typically start as insurance team specialist, then be promoted to team leader which provided the training opportunities to become a manager eventually. ECF No. 29-3 at 8. Jones proceeded from team specialist directly to manager having never worked as a team leader. The only justification for DHS breaking with its own practice is Jones' superior "management experience," which is belied by the evidence. ECF No. 30 at 39. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002) ("The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext."). Unlike Crawford, Jones did

not supervise any employees, did not oversee time and attendance for other employees, nor did he ever function as a team leader while he was an insurance team specialist. ECF No. 30-5 at 25. Genuine issues of disputed material fact abound with regard to whether DHS' proffered reasons for promoting Jones were pre-textual.

In sum, the evidence pointing to Crawford's superior qualifications, DHS's reliance on a hiring policy it did not usually follow, and questionable *post-hoc* explanations for choosing Jones over Crawford, preclude summary judgment. Defendant's motion must be denied. A separate order will follow.

9/2/2016\
Date

/S/\
Paula Xinis\
United States District Judge